592 So.2d 799 (1992)
Michael CARDINALE, Appellant,
v.
Carol THOMPSON, Appellee.
No. 91-1023.
District Court of Appeal of Florida, Fourth District.
February 5, 1992.
Michael S. Davis of Michael S. Davis, P.A., Wilton Manors, for appellant.
Frank W. Weathers of Law Offices of Weathers & Knapp, Lantana, for appellee.
POLEN, Judge.
Michael Cardinale brings this appeal from a final judgment in which the trial court ruled, as a matter of law, that a release executed by Cardinale and appellees, Carol Thompson and State Farm Mutual Automobile Insurance Company, could not be set aside. We reverse.
On July 4, 1987, Cardinale was injured when a vehicle operated by Carol Thompson collided with his vehicle. On September 9, 1988, Cardinale entered into a settlement agreement with Thompson in the amount of $12,000.00, and executed a release. Approximately three (3) months later, on December 19, 1988, Cardinale suffered *800 a seizure. He instituted the instant action, in part, to set aside the release. He alleged that the brain seizure was an "unknown and distinct" injury from that for which he released Thompson, and that the parties were under a mutual mistake of fact concerning the nature of his injuries when they executed the release.
Prior to the hearing on his complaint, the parties entered into a stipulation of facts, which included the following:
4. The Plaintiff [Cardinale] was treated at the emergency room of West Boca Medical Center suffering from contusion and hematoma of the left eye. He was diagnosed by Dr. Stanger as having sustained an acute cervical radiculopathy. He was also seen by an orthopedic surgeon, Dr. Howard J. Rudnick who diagnosed him as having a severe cervical strain. He was seen by Dr. Jerome Levine who found a swelling and ecchymosis of the left eye and who diagnosed contusion of the neck and eye. He was also seen by Dr. Benita Kurtzman who indicated that he had an ecchymosis of the left orbit... .
... .
8. It is agreed that neither the Defendant nor any representatives of the Defendant nor the Plaintiff, nor any representatives of the Plaintiff were aware of or considered any brain injury or potential seizure activity at the time the release was executed.
... .
10. The parties agree that the injury to the brain and the seizure were related to the accident of July 4, 1987 and was causally related to the accident . .. through the mechanism of the blow to the left eye and orbit when the Plaintiff struck the windshield visor or the windshield.
Thus, the stipulation was such that the only issue remaining before the trial court was whether Cardinale's seizure constituted an unknown consequence of a known injury, (the known blow to his left eye and orbit), or whether the seizure resulted from an unknown injury (the unknown brain injury). If the former were true, the release would not be set aside. If the latter were true, it would. The trial court heard argument of counsel and concluded, as a matter of law, the release could not be set aside.
The trial court relied upon Van de Water v. Echols, 382 So.2d 147 (Fla. 4th DCA 1980), and DeWitt v. Miami Transit Co., 95 So.2d 898 (Fla. 1957). In Van de Water, a husband and wife were involved in an automobile accident, which resulted in the husband suffering lacerations in his ear, neck, and face, requiring more than fifty (50) stitches. Van de Water, 382 So.2d at 147-48. After signing a release purporting to include all claims growing out of known and unknown personal injuries, Van De Water required an operation for removal of a subdural hematoma. Id. at 148. This court noted:
It is settled that a release of a claim for personal injuries may not be avoided simply because injuries prove more serious than had been anticipated at the time of execution of the release. On the other hand, a release executed pursuant to a mistake as to a past or present fact, such as the existence of injury, may be set aside under appropriate circumstances.
Id. (citations omitted). This court concluded that the testimony of appellant revealed that he "not only knew of the existence of the injury, but also understood its seriousness, including the possibility of future complications." Id. at 149. The release precluded recovery because Van de Water was aware of the seriousness of his injury, including the possibility of complications such as the subdural hematoma.
Similarly in DeWitt, the plaintiff sustained injuries to her lower back while a passenger on a bus, and after several through physical examinations and some treatment, settled her claims with the Transit Company and signed a series of releases. DeWitt, 95 So.2d at 899-900. Approximately one year after the last release was signed, in preparation for an unrelated surgery, DeWitt was examined again, and this examination revealed the existence of a previously undiagnosed herniated disc in her lower back. Id. at 900. DeWitt instituted suit against the Transit Company, introducing the affidavit of the orthopedic specialist who had examined her before she signed the last release. Id. In his affidavit the physician stated that he "`was not *801 convinced'" that DeWitt suffered from a herniated disc until his most recent examination. Id. The Supreme Court affirmed the trial court's refusal to set aside the release, finding that DeWitt and her doctors were fully informed that she had suffered an injury to the lower back, although they failed to accurately evaluate the ultimate product of that injury. Id. at 901.
The instant case in distinguishable from both DeWitt and Van de Water. Unlike the circumstances present in those cases, there is no indication that Cardinale or his doctors had reason to suspect a brain injury when he was initially diagnosed. The only manifestation of this injury, the seizure, did not occur until well after the release was executed. While the doctors had diagnosed a severe injury to the nerve roots in Cardinale's neck, swelling or hemorrhage of the eye and orbit, and discoloration of the neck and eye, the injury to Cardinale's brain was an unknown injury at the time the release was executed. Stipulations of fact number 4 and number 8 support this conclusion.
Appellees choose to refer to Cardinale's diagnosed injuries collectively as "an injury to the head," arguing that the injury to Cardinale's brain was but another facet of Cardinale's diagnosed injury to the head, and therefore was a known injury for which he released appellees. We do not agree with appellees' overly broad characterization of the injuries Cardinale sustained.
The release executed by Cardinale was executed pursuant to a mistake as to the existence of Cardinale's brain injury. Under these circumstances, the release should have been set aside. Therefore, we reverse the final judgment and remand to the trial court with directions that the release executed by Cardinale and appellees be set aside.
REVERSED and REMANDED.
GLICKSTEIN, C.J., and DELL, J., concur.